### STONE *vs.* PROCTOR.

The act fixing the time within which actions must be entered in Justices' Courts, is directory to the Justices. Of the actual time of entry the Justice is necessarily the judge in the first instance. If the party be dissatisfied with his decision, he may plead the matter in abatement, and have the fact found by a Jury; but, if he waive it, and plead to the merits of the action, he is and ought to be bound by his election, and the defendant can never thereafter avail himself of the same matter in abatement, by writ of error or otherwise.

If a barn or farm-yard passes with the farm by a deed of conveyance, and if the grantor convey the manure from the farm and use or dispose of it, the purchaser of the farm may maintain trover against him, and recover the value of the manure.

THIS was a writ of error brought to reverse a judgment rendered by the County Court for the County of Windsor, in an action of trover, originally commenced before a Justice of the Peace. On trial before the Justice, the defendant made a motion to the Court, *ore tenus,* to dismiss the action, for that it was not entered or called within two hours after the time set in the writ for trial. The Justice refused to dismiss the action, whereupon the defendant went to trial upon the merits, and judgment was for the plaintiff—from which the defendant entered an appeal to the County Court.

*Windsor,*
June,
1824.

Stone
*vs.*
Proctor.

The defendant renewed his motion in the County Court to dismiss the action, which was overruled by the Court.

The defendant then pleaded the general issue, and the Jury returned a verdict for the plaintiff, on which judgment was rendered: Upon which the defendant filed the following bill of exceptions which was allowed by the Judges, on which this writ of error was brought.

Before the trial of said action, the defendant filed his motion to dismiss said action, on the ground that the same was not entered in the Justice's Court till more than two hours after the time set in the plaintiff's writ for trial. Reference is had to said petition on file, and the defendant offered to prove that he requested the Justice who tried said action, to make a record of said objection of the defendant to the entry of said action, and certify the same to the Court; but said plaintiff objected to the Court's receiving said motion to dismiss, so as to try its merits, and said Court sanctioned said objection, and refused to receive said motion to dismiss so as to try its merits. And on trial of said action to the Jury, the only evidence the plaintiff adduced to show his title to the manure sued for, was a deed from the defendant to the plaintiff, dated March the 2d, 1822, of the land on which said manure then was, as it originally lay in the barn-yard and in heaps at the stable windows, and it was admitted by the plaintiff that the defendant was to retain possession of said land till the first of April, in said year 1822, and the plaintiff proved that said defendant, before said first of April, to wit, on the 28th and 29th days of said March, carted said manure off from said premises to a distance of forty or fifty rods, and there placed the same in a heap, on the land of a Mr. Tuttle, and that in May following the defendant sold the same. The plaintiff also proved the value of said manure, which is all the testimony adduced by the plaintiff. And the defendant moved the Court to order a nonsuit on the ground that said testimony did not support said action; but said Court refused to order a nonsuit, but suffered said action to proceed. Said defendant then requested said Court to give in charge to said Jury, that said manure, as it lay, when said deed was given, was personal estate, and of course the plaintiff had no right to the same by said deed—also, that if said manure was real estate, and the title passed to the plaintiff by said deed, yet if the

14

Jury should find that the defendant severing the same from the freehold, and carrying it away from said premises, and placing the same in said heap, was one continued act, the action of trover would not lie. But said Court refused so to charge said Jury, but did then charge to the contrary on both of said points ; and as said matters do not appear of record, &c.

The errors specially assigned are,

1.—That the County Court refused to hear and try the merits of a motion to dismiss the action made by Stone the defendant below, (which motion was predicated on matters *dehors* the record) and also that they refused to dismiss or order a nonsuit in said action, upon said motion.

2.—That said Court refused to charge the Jury that said manure in the situation in which it was, was personal estate, and did not pass by the deed, but on the contrary did charge the Jury that the same was real estate, and did pass by the deed.

3.—That said Court refused to charge the Jury, that if they should find, that the severing of said manure from the freehold, and carrying the same away, was one *continued act, trover* would not lie for the same, but did charge the Jury that even if they should so find, yet trover would lie.

Plea—*There is no error.*

*Hutchinson* for the plaintiff in error.

Proctor brought his action of trover before a Justice for forty cart-loads of manure. The plaintiff did not enter his action before the Justice till after two hours from the time prescribed in the writ for its return. Stone objected to the entry of the action. The Justice overruled the objection, and entered the action. The trial proceeded. The plaintiff, Proctor, recovered judgment, and Stone appealed to the County Court. Stone's attorney applied to the Justice for the copies of the case and the appeal, and particularly requested the Justice to transmit with the copies, and as a part thereof, the objection of the defendant to the entry of the action ofter the two hours had expired. But the copies were made and forwarded by the Justice, wholly omitting that part which related to the objection to the entry of the action.

Stone made his motion in writing to the County Court for a

Windsor,
June,
1824.

Stone
vs.
Proctor.

dismissal of the action, on the ground that the Justice had no jurisdiction of the action through want of a seasonable entry, and offered to prove the non-entry within two hours—the objection made to the entry, and the overruling the objection, and the request made to the Justice to have all this appear in his copies of the appeal, and showed by the copies of the appeal that the defendant had not, in writing, assented to the entry. But said County Court refused to hear the evidence upon, or in any way to try the merits of said motion, but did dismiss the same without trying its merits.

This is *assigned* for error, and we deem it to *be* error. If the fact were as we contend, the Justice had no jurisdiction. The statute is peremptory that the action shall not be entered after two hours, unless by the consent of the defendant, and said consent entered of record. See stat. Vol. 1, p. 185—6.

If the Justice did not enter of record any consent, which he did not in this case, and refused to send up a record of objection, these facts should be proved by parol; and being proved, should prevail.

We rely, as in point, upon 8 John. R. 391, Proudfit *v.* Henman and Henman. Same 409, Low *v.* Rice. 7 Mass. 28. 11 John. 407.

The points on which the other errors are assigned arose upon the motion for non-suit, and in the charge to the Jury, and the Court refusing to charge as requested. These depend

1st.—Upon the question whether the manure as it lay originally in the barn-yard, and in heaps at the barn-windows, was real estate, and passed by the deed of Stone to Proctor, or whether it was personal estate, and might be used by Stone, notwithstanding his deed. And

2dly.—Whether the taking and carrying away of the manure, if all one continued act till it was placed off the premises on other lands, would support an action of trover, or must be trespass. Upon the first of those points, we find but one instance in which the question was ever raised, and in that it was decided to be personal estate. Vin. Abr. Vol. 11, p. 175. Citing Styles 66 Mich. 23d case, Carver *v.* Pierce.

There is one case in which it has been decided in New-York or Massachusetts, that for a tenant to carry manure off of premises

*Windsor,*
June,
1824.

Stone
*vs.*
Proctor.

was not good husbandry; but this has nothing to do with the question whether it is *real* or *personal* estate. If it is *real* estate, we may ask when it becomes so. Truly it is not so when in hay and fodder, after severed from the freehold, and before eaten by the creatures—nor while within the body after eaten—nor should we suppose by its being dropped upon the stable floor, nor while on the shovel passing out of the window upon the ground in heaps, or being originally dropped about the barn-yard; in both which cases, it is necessarily to be moved before use. As well might we suppose the hay lying upon the ground before raking, or in winrows or heaps before carting, or wood lying upon the ground in the woods or about the door-yard, or in heaps there, are real estate. In all which cases, the lying on the ground forms the only ingredient they possess of real estate. Indeed, by the same rule, our cattle and sheep, when lying on the ground, would be real estate. When manure is carried to, and spread upon the fields to increase vegetation, it necessarily becomes real estate; but never till then.

We conceive that rocks as they lie upon the land in their natural state, are real estate: but if collected into heaps to be used about wall, they are personal estate, severed from the freehold. But when laid into wall to remain permanent, they again become real estate.

With regard to the last point, if the manure was real estate, the taking and carrying away, if one continued act, is trespass, and cannot be trover. And after once wholly gone from the possession of Proctor by one continued act, the after using would not vary the nature of the action. To this we cite Bl. Com. p. 382, where the cutting and carrying away trees at one and the same time, cannot be stealing, but only trespass; but the cutting at one time, and secretly carrying away at another, is theft: Because by the cutting and leaving, the trees become personal estate. For says the book, it is the severing from the freehold that makes them personal estate, and as such they never were in possession of the owner of the soil. So if the manure in question were ever real estate, it was never in Proctor's possession otherwise than as real estate: of course, can never be the subject of an action of trover in his favor.

On any ground, therefore, we conceive the judgment of the County Court ought to be reversed.

*Washburn* for the defendant in error.

It is contended by the defendant in error,

1.—That it appears by the record of said Justice, that the original action was duly entered and tried before said Justice. And the record is, in law, conclusive between the parties. Phil. Ev. 227, 228. Bull. N. P. 221.

2.—That if said action was not entered before said Justice within the said two hours, yet said Stone, by appearing and pleading to said action, and praying for, and actually proceeding to a trial by Jury, on the merits of said action, waived all exceptions to the entry.

3.—That said manure was appurtenant to said land, and passed therewith by virtue of said deed. Esp. N. P. Vol. 1, part 2, p. 131. 4 John. R. 156, Hyatt *v.* Wood. Coke Lit. 121.

4.—That said manure by being severed from said land became personal property. That said Stone by changing it into personal property, could not acquire any title to, or interest in it, as against said Proctor; but by being severed from said land, it became and remained the personal property of said Proctor, as long as it was capable of being identified. 3 Wils. R. 338. 5 John. R. 348. 6 John. R. 168. 5 Mass. R. 342.

5.—That for carrying off said manure after it was severed from said land, and putting it into a heap on the 28th and 29th of March, and selling and disposing of the same in May following, trover will lie. 1 Chit. on Pleas and Pleading, 149. 6 Bac. Abr. Trover B. 679. 7 Term Rep. 13. Croke Car. 242. Com. Dig. Biens II. 145, 146. 15 Mass. 204.

AIKENS J. delivered the opinion of the Court.

Justices' Courts in this State, are Courts of record. If a Justice of the Peace should refuse to record, or to certify his record of any cause by him tried, of which he has jurisdiction, this Court have power to compel him; but when once the record is produced, it has the same conclusiveness between the parties, as the record of any other Court. The act fixing the time within which actions must be entered in Justices' Courts, is directory to the Justices. Of the actual time when actions are entered, they are necessarily the judges, in the first instance. If the party is dissatisfied, he may plead the matter in abatement, and have the fact found by a Jury.

*Windsor,*
June,
1824.

Stone
*vs.*
Proctor.

*Windsor,*
June,
1824.

Stone
*vs.*
Procter.

But. if he waive it, and plead to the merits of the action, he is, and ought to be, bound by his election. Nor does such an objection become a part of the record, unless it is presented by a plea, that it may be answered and the issue found. The Justice did right therefore, in not incorporating the objection in his record.

There is no principle in pleadings better settled, than that where a subject matter of abatement has been waived, and a plea put in to the merits of the action—the cause for abatement cannot afterwards be resorted to. No plea in abatement having been filed before the Justice, none could be received before the County Court. And the motion to dismiss, for that cause, can only be regarded, as an attempt to avoid a salutary and well settled principle of law.

A motion does not admit of an issue and finding by a Jury. To permit a motion effecting the destruction of the suit to be predicated upon the suggestion of new facts, would be an infringement of the right of trial by Jury. There was no error, then, in the rejection of the motion to dismiss.

As to the second error assigned, in the absence of precedent and settled authorities, it becomes the duty of the Court to resort to principles, and establish such rules as will be most salutary in practice, and best answer the purposes of Justice.

The distinction between real and personal estate, though of the utmost importance, and obvious enough in most cases, is, nevertheless, artificial, and in some instances, difficult in its application. Indeed, the same substance is, at different times, classed with the one or with the other, depending on its local situation, conformation, use, or other accidental qualities.

The dung of domestic animals, which is the species of manure for which this action was brought, is a substance, which may, perhaps, be ranked with either class, without violence to the general rule. In new countries, where the soil is rich and strong, it is of no value ; and its accumulation in a yard or about a stable, is regarded as a nuisance by the proprietor. Where the soil is sterile or much worn, it becomes an article of value. But so do many other decayed vegetable substances. Yet, it can hardly be contended, that when the original soil becomes exhausted from long tillage, the vegetable moulds become *pari passu* personal estate, because they acquire a fictitious value, from that circumstance, as a ma-

*Windsor,*
June,
1824.

Stone
*vs.*
Proctor.

nure. The fact that the original substances were severed from the soil before being eaten by the animals, furnishes no argument. When it is voided by the animals, it has done its office, and is returned to the earth whence it came—as much so, as the leaves of the trees which are severed and decomposed by the hand of time. And it is not perceived why the herding of animals, which compels them to drop their manure within a small compass, so as to make it of easier collection than when voided about the fields, should change its character. It is nevertheless worse than useless, except as a *soil*. As such, it is most valuable on the premises where it is made. It is generally needed there. Its cumbersomeness and the wasting nature of its valuable properties, render it of little or no use to transport to a distance. Its analogy to other decomposed vegetables which are unquestionably of the freehold, and pass with it by deed, and the policy of the rule as applicable to rural economy, induce the Court to decide that the manure of animals being in the yard and at the stable-windows in the state in which it usually accumulates, is part and parcel of the freehold, and that, as such, it passes with the freehold, by deed.

It was said in the argument, that there is a case in Stiles, 66, Carver *v.* Pierce, in which it was decided that manure is personal estate. The case has not been produced in Court, and can afford no light on the subject, unless it should appear what the particular situation of the manure was. There is no doubt but that any portion of the freehold becomes *quasi* personal estate, by severance and removal. A load of clay, sand or stone, when in the market, or detached, collected and secured, with a view to some particular use, is, till again attached to the earth by the use intended, personal estate, and, as such, may be the subject of theft or trover.

The third exception is, that said Court refused to charge the Jury, that if they should find that the severing said manure from the freehold, and the carrying the same away, was one continued act, *trover* would not lie for the same; but did charge said Jury, that even if they should so find, yet trover would lie.

On this subject it is only necessary to observe, that the case proved, as stated in the bill of exceptions, did not require that this question should be decided. The request, that the Court should charge the Jury on the hypothetical point, here stated, was imper-

*Windsor,*
June,
1824.

Stone
*vs.*
Proctor.

tinent. And, whether the charge of the Court was right or wrong, in relation to it, is equally immaterial. If the facts should support the verdict, in law, it is sufficient. A right judgment can never be reversed because it was rendered upon wrong reasons. True reasons must nevertheless exist, and the result cannot be changed.

It appears then from the case, as stated in the bill of exceptions, that the plaintiff in error, during two or three of the last days, in which he had liberty to remain on the farm, after the sale, collected this manure and carried it off from the premises, and placed it in a heap on the land of Mr. Tuttle, a near neighbor ; and that more than a month afterwards, he sold it to his own use.

The stripping the farm of the manure, was an act not authorized by the licence to remain on the place till April. It was tortious and in the nature of a trespass. But a trespass does not give to the trespasser the right of property. *That* remains in the original owner, so long as the substance remains and the same can be identified. The manure was as much Proctor's, after being wrongfully heaped up on the land of Tuttle, as it was before. That an action of trover will lie for the subsequent conversion, by the sale of the manure in the month of May, is a proposition too clear to need elucidation.

The judgment of the County Court is, therefore, affirmed, and interest on the amount of that judgment is adjudged to the defendant in error, as additional damages for his delay, with costs.