<hr />

## NEEDHAM *v.* ALLISON.

24  355
67  534

A lessor has no claim to manure made in buildings unconnected with agricultural property, or out of the course of husbandry.

TROVER, for forty-five loads of manure, April 1, 1848.

It appeared that on the 13th of September, 1847, the defendant conveyed to the plaintiff his farm in Dublin, in this county, which the defendant then occupied. By a clause in the deed he reserved the possession until the first of April, 1848, and agreed at that time to give the plaintiff the possession.

At the date of the conveyance there was some manure about the barns and yards, all of which was carried out in the fall and spread upon the land for the use of the plaintiff.

At that time there was in the barn, hay and other fodder be-longing to the defendant, and a portion of it was fed out to his cattle in the course of the ensuing winter season, and the manure was thrown out of the windows, and a portion of it lay about them and another part about the barn yards. Prior to April 1, 1848, the defendant sold all the manure made from his stock kept by him on said farm, and from his said hay and fodder, and the same was in part drawn away from said farm by the purchaser, and the residue was sold by the purchaser to the plaintiff, and by him used on the farm.

A verdict was taken, by consent, for the plaintiff, for the value of the manure made from said hay and stock after said convey-ance, and before the first of April, 1848, on which judgment is to be entered, or the verdict set aside, as the court shall adjudge.

*Chamberlain,* for the plaintiff.

*Wheeler,* for the defendant. An outgoing tenant has a right to sell or remove the manure made by him, if done during the continuance of the tenancy. This is the law in England, and it has been adopted in some of the States. *Roberts* v. *Barker,* 1 C. M. & R. 808, (as referred to in 2 Har. Dig. 3660, and 2 Kent's Com. 347, note a, 5th ed.); *Smithwick* v. *Ellison,* 2 Iredell 326, referred to in the above note, 2 Kent's Com. And the court in New Hampshire intimate the same opinion. *Kittredge* v. *Woods,* 3 N. H. Rep. 506.

The law is held differently in some of the States, as in *Daniels* v. *Pond,* 21 Pick. 367 ; but in that case the soil belonging to the premises was intermixed with the manure.

In *Staples* v. *Emery,* 7 Greenleaf 201, it was decided that manure might be attached and held as the property of the tenant.

But however the general rule may be, this is not the common

case of tenancy. The defendant originally owned the premises, and did not part with the possession until after the sale of the manure. He did not take upon himself during that time the ordinary obligations of a tenant who obtains crops from the land which he holds under a lease. At most, he was but a *quasi* tenant, and that in a very restricted sense. The hay must have been gathered at the time of the sale of the real estate. The defendant was the absolute owner of the hay and the cattle; and the hay was converted into manure under his direction and at his expense.

It is difficult to see, under these circumstances, how the right of property should be changed, or in what way or at what time the plaintiff acquired any interest in or title to the manure.

BELL, J., delivered the opinion of the court. It is settled here that manure, as between the buyer and seller, passes with the land, whether it is drawn out upon the land for the purpose of use there, or is lying in heaps, or otherwise, about the barns or yards. *Kittredge* v. *Woods*, 3 N. H. Rep. 503. The same is regarded as the law elsewhere in this country. *Stone* v. *Proctor*, 2 D. Chip. 115; *Wetherbee* v. *Ellison*, 19 Vt., (4 Wash.) 379; *Lassell* v. *Reed*, 6 Greenl. 222; *Middleborough* v. *Corwin*, 15 Wend. 169; *Goodrich* v. *Jones*, 2 Hill 142; *Daniels* v. *Pond*, 21 Pick. 371.

That principle, however, does not reach this case, since there is here no question except in relation to the manure made upon the premises subsequently to the sale, and while the defendant may be regarded as a tenant of the purchaser.

In England, in the case of manure made by a tenant of merely agricultural property, in the ordinary course of husbandry, Chancellor *Kent* seems to be of the opinion that the custom is for the outgoing tenant to sell or take away the manure. 2 Com. 347, n, a. He cites *Roberts* v. *Barker*, 1 C. & M. 809; and the cases of *Higgon* v. *Mortimer*, 6 C. & P. 616; *Hutton* v. *Warren*, 1 M. & W. 466; 2 Gale 71; *Beatty* v. *Gibbons*, 16 East 116, support that view, while the cases of *Brown* v. *Crump*, 1 Marsh.

567 ; *Putney* v. *Sheldon*, 5 Ves. 147, 260, n, and *Onslow* v. —,
16 Ves. 173, seem to countenance a different rule, where there
is no special contract or custom of the country.

In this country, in some of the States it has been held that
the manure made by the tenant during his term, is his property,
which he has the right to remove or sell, and which may be
attached and holden as his property for the payment of his
debts.    *Staples* v. *Emery*, 7 Greenl. 201 ; *Southwick* v. *Ellison*,
2 Iredell 326.

In others, it is held that in the absence of special agreement,
or a special custom, the rules of good husbandry require that the
manure made upon a farm, in the ordinary course, should be
expended upon it ; that such manure is an incident of the free-
hold, and belongs to the landlord, subject to the right of the
tenant to use it in the cultivation of the land ; and that the
tenant has no right to remove or dispose of it, or to apply it to
any other use, either during or after the expiration of his
tenancy.  *Wetherbee* v. *Ellison*, 19 Vt., (4 Wash.) 379 ; *Middle-
brook* v. *Corwin*, 15 Wend. 169 ; *Goodrich* v. *Jones*, 2 Hill 142;
*Lassell* v. *Reed*, 6 Greenl. 222 ; *Daniel* v. *Pond*, 21 Pick. 371;
to which add *Kent's* opinion, 2 Com. 347, n, a.

But it is urged upon us, that whatever may be the rule as to
agricultural property, it is here immaterial, because the tenancy
was not for agricultural purposes, in the ordinary course of husbandry.  By his deed, the defendant reserved the possession of
the property from its date in September, till the first of April
following.  He owned the hay and stock from which this manure
was made.  He was under no obligation to keep either upon the
place, except for his own convenience, and he was bound by no
duties to the purchaser resulting from contract, either express
or implied, except that of giving up the possession on the first
of April.

It was substantially, so far as this question is concerned, a
reservation of the buildings merely, since the season of farming
operations was chiefly passed, and the rights of the parties were
rather like those of the lessor and lessee of livery stables, or the

like, than those of farming tenants. There would seem to be no doubt that -as to this kind of buildings there would be no pretence that the lessor would have any claim to the manure, except such as might result from ·express contract. *Daniels* v. *Pond,* 21 Pick. 367; *Lassell* v. *Reed,* 6 Greenl. 222.

This view strikes us as just and reasonable, and most consistent with the reasonable understanding and expectations of the parties. No one can doubt that this must have been the idea of the defendant, or he would have made his reservation clear in this respect. And it is not easy to imagine that the plaintiff should leave it a subject for a doubt, if he supposed he was to have this manure, and it was so understood.

Upon this ground we are of opinion there must be

*Judgment for the defendant.*