JOSEPH A. WING v. BENJAMIN GRAY.

*Landlord and Tenant. Parol Evidence. Good Husbandry. Personalty.*

J. and B. owned jointly the crops, cattle and other personal property valued at $390, on a farm which belonged to J. J. leased the farm to B. at a stated price, and B. claimed that he at the same time purchased J's half of the said personal property. No written transfer was made to B. but B. gave his note to J. for one-half of the $390, with a memorandum, saying it was given for the produce of. the farm and the cattle, but saying nothing of the other personal property on the farm; and J. gave B., the defendant, an agreement that he might have the use of the farm for one year &c., and the agreement provided that "the said B. is to have all the personal property with the farm." *Held*, that this proviso may mean that he should have the personal property absolutely as his own, or should have only the use of it, and the intent may therefore be shown by extrinsic parol evidence.

The question whether good husbandry requires that the whole of the hay raised on a farm should be fed out on it, is one of fact for the jury.

Where hop-poles are put on to a farm by a tenant for his own temporary use with the intention on his part of removing them, it is *held*, that he has the right to remove them, both as between himself and his landlord, and his landlord's grantee.

An agreement between a lessor and lessee that the lessee should have half of all that the farm could be sold for above a certain price, would not effect the lessee's rights under his lease.

When it does not appear for what purpose posts and boards were kept or left on a farm when sold, they must continue to be regarded as personal property.

THIS was an action of trover, commenced in February, 1856, and also an action on the case commenced in August, 1861. On motion the two actions were, by order of the court, consolidated and both tried together at the September Term, 1862, by jury, under the plea of the general issue, PECK, J., presiding.

The plaintiff introduced a deed from John Gray to himself of the farm in question, dated May 8th, 1854, and a deed from one Johnson to John Gray of the same premises, dated in September, 1853.

It appeared that the defendant Benjamin Gray, and his brother John, bought the said premises of said Johnson, together with certain personal property on the farm consisting of the crops raised on it the year of the purchase, some posts and boards,

sap tubs and kettles; the latter had been used on the place for several years. The price to be paid for the whole property, including a yoke of cattle, was $1390. John and Benjamin Gray agreed that John should pay for the farm, and that each should have half that was made in the sale of it over and above $1,000, which they called the purchase price; and that Benjamin should have the use of it and pay John the interest on the purchase price, until they could sell it. John took the deed of the place, and finally paid the whole of the $1,000 for the real estate.

The evidence in regard to the sale and payment of the personal property is given in the opinion of the court.

It also appeared that the defendant did not reside on the place, but lived a mile or two distant, and carried away from the place the greater portion of the hay and straw raised thereon. The plaintiff claimed that good husbandry required the defendant to feed out the hay on the place, and asked the court so to charge the jury,—but the court declined so to charge, but left that question to the jury to decide upon the evidence,—to which the plaintiff excepted.

It further appeared that when the farm was purchased of Johnson there was a patch on it that had been planted with hops that season, and that no poles had been set on it; that in the spring of 1854, while the defendant was in possession, he cut some poles on the premises and stuck them up in the hop yard, but not being able to get enough he bought 1000 poles, and stuck them up and used them in the hop yard the summer of 1854; that they were stuck up separate from the others and that in March, 1855, before the defendant left the premises, he took the same 1000 poles and moved them just off the premises, and sold them to a man that John Gray let the farm to that season; the purchaser took them back on to the farm and used them in the hop yard that season. The evidence tended to show that the hop poles had been set in the hop yard at the date of the plaintiff's deed from John Gray.

The plaintiff claimed that the hop poles became his by force of the deed to him from John Gray, and that defendant was liable for such as he removed and sold, and requested the court

Wing *v.* Gray.

so to charge. The court so charged except as to the said 1000 poles, as to which the court decided if the defendant removed and sold the same identical poles which he so purchased and no others, he did no more than he had a legal right to, and charged the jury accordingly,—to which the plaintiff excepted for not charging as requested, and to the charge as given.

It appeared that there were forty cedar posts piled up on the premises. There was no evidence for what purpose they were there ; they lay there from the time of the purchase of Johnson, till March, 1855, just before the defendant left the premises, when he took twenty of them off the premises, the rest being covered up in snow so he could not easily get them, were left on the premises. The defendant at the same time drew off some 500 or 600 feet of the boards which also lay there during that time. The plaintiff claimed and requested the court to charge the jury that the personal property bought of Johnson with the farm, that was not sold by John Gray to the defendant, passed to the plaintiff by force and operation of the deed from said Gray to the plaintiff. The court refused so to charge, but decided that the sap tubs, kettles, boards, and cedar posts would not pass or be transferred to the plaintiff by operation of the deed, but that if it was agreed between the plaintiff and John Gray that the plaintiff should have in the purchase the personal property, as the evidence of the plaintiff tended to show, the plaintiff thereby acquired all the title to the personal property that John Gray had at the time of such agreement, although such agreement was verbal, and no written transfer executed, and so charged the jury. To such refusal and charge the plaintiff excepted so far as relates to the cedar posts and boards.

*Wing, Lund & Taylor,* for the plaintiff, insisted 1st, that parol evidence was inadmissable to prove that the sap tubs, kettles, &c., were sold by John Gray to Benjamin Gray. 2nd, that the court erred in not charging as requested in relation to stripping the farm of the hay and straw. *Brainard et al.* v. *Burton, et al.,* 5 Vt. 97; *Wetherbee* v. *Foster,* 5 Vt. 136; *Briggs* v. *Georgia,* 12 Vt. 60; *Mason* v. *Silver,* 1 Aik. 367; *Vaughan* v.

*Porter*, 16 Vt. 266 ; *Campbell* v. *Day*, 16 Vt. 558 ; *Hazard* v. *Smith*, 21 Vt. 123 ; *Trow* v. *Vt. C. R. R. Co.*, 24 Vt. 488. 3rd, that there was no distinction between the poles cut on the farm and those cut off of the farm. They were all a part of the realty. *Bishop* v. *Bishop*, 11 N. Y. 123 ; *Goddard* v. *Bolster et al.*, 6 Greenl. (Me.) 427 ; *Kentz* v. *Fincher et al.*, 12 Iredell (N. C.) 297 ; *Heaton* v. *Findley*, 12 Penn. St. R. 304 ; *Rogers et al.* v. *Gillenger et al.*, 30 *ib.* 185 ; *Powers* v. *Dennison et al*, 30 Vt. 752. The common cases of landlord and tenant do not apply to this case on account of the interest which the defendant had in the farm under the agreement between him and John Gray in respect to the sale of it. 4th, that the posts and boards passed under the deed to the defendant.

*B. N. Davis*, for the defendant.

The parol testimony was properly admitted to show that the personal property bought with the Johnson farm, was sold by John Gray to Benjamin Gray (the defendant) before Wing purchased the farm. 1 Green. Ev. § 299. The question of good husbandry was properly left to the jury. The one thousand hop poles which the defendant, during his tenancy, purchased and bought on the premises did not become the plaintiff's by force of the deed from John Gray to him. *Wetherbee* v. *Foster*, 5 Vt. 136 ; *Tobias* v. *Francis*, 3 Vt. 425 ; *Miller* v. *Baker*, 1 Met. 27 ; Chitty on Cont. title "Fixtures," 325, 357. Nor did the personal property bought of Johnson with the farm pass to the plaintiff by force of the same deed. *Brackett & Wife* v. *Wait et al.*, 6 Vt. 411.

*Peck & Colby*, on the same side, cited, in addition to cases already cited, *Wait* v. *Wait*, 28 Vt. 350 ; *Preston* v. *Briggs*, 16 Vt. 124 ; 2 Smith's Lead. Cases, 49 ; 2 Peters, 144 ; *Miller* v. *Baker*, 1 Met. 27.

ALDIS, J. 1. The plaintiff claimed to recover in trover for the sap-tubs, cedar posts, potash kettles and boards, upon the ground that he owned them by purchase from John Gray, and that John Gray had never sold them or his interest in them to the defendant ; but he conceded that John Gray sold the crops and cattle to the defendant.

Johnson originally owned the farm, the crops, the cattle and the above named personal property. He deeded the farm to Gray; but there was no written transfer of the crops, cattle and personal property to any one, and the sale as to them rested in parol. To whom did Johnson sell them? John Gray testified that the note for them ($390.) was given by him and the defendant jointly to Johnson. The defendant claimed that each gave a note for one-half of $390 to Johnson.

Although it is said that John Gray and the defendant estimated the value of all this property at $390, and that the defendant agreed to take it at that price, still we think from the whole case it is quite plain that they understood that they were joint owners of all this property, and whether they signed a joint note for the $390, or each a separate note for half that sum is immaterial. For a week after the purchase of Johnson they jointly owned all this property, and there was no writing of any kind between them in regard to it. After the lapse of a week, as both parties agreed and testified, the defendant bought of John " the other half of the personal property which the parties had estimated at $390." No written transfer was made on this occasion, but the defendant gave his note to John for one-half of the $390. with a memorandum signed by him that it was given for the produce of the farm and the cattle, and saying nothing of the other personal property; and John gave the defendant an agreement that he might have the use of the farm for one year with the right to sell it for $1200. or over, and it proceeds,—"the said Benj. Gray is to have all the personal property with the farm ;" and by another paper signed at the same time John Gray agreed that Benjamin should have half of what the farm sold for over $1000. The plaintiff now claims that the note for the one-half of the $390. and the memorandum should be regarded as the written evidence made by the parties to show their agreement as to the sale of the personal property, and that the parol evidence was not admissible to show that " the personal property which they had estimated at $390." included the articles which the plaintiff seeks to recover for in this suit.

I. It is obvious that all the papers executed at the same time

in regard to the trade must be construed together.    The written
proviso that " defendant should have all the personal property
with the farm " may mean, that he should have it absolutely as
his own, or that he should only have the use of it.    It is open to
either construction, and the intent may therefore be shown by
extrinsic and parol evidence.    The note and memorandum say
nothing as to the personal property in question.    They do not
purport to describe what the personal property was which the
parties " *had estimated* at $390," but only state that the note was
given for the crops and cattle.    When the parol evidence is
introduced it is plain beyond dispute that the defendant was to
have all the personal property absolutely as his own, and that the
property which the parties had estimated at $390. did include all
the personal property in dispute.

II.  The defendant, while he carried on the farm, was bound to
good husbandry.   He cut from 18 to 25 tons of hay and fed out a
portion of it on the farm, but drew off the greater portion.    The
plaintiff claimed that good husbandry required that the whole of
the hay should be fed out on the farm, and that if any portion of
it was drawn off that was, as matter of law and without further
proof, a breach of good husbandry.    This we think was the sub-
stance of the request, for the evidence *tending* to show that good
husbandry in fact required it all to be foddered out on the premises
does not appear to have been conceded by the defendant to be cor-
rect ; and if not yielded to by the defendant it was for the jury to
pass upon its credibility ; and it was so submitted to them by the
court.

Whether a portion of the hay crop may be sold off from a farm
without injury, must depend upon the condition of the farm.
Good husbandry requires that farming lands should be kept
fertile, and to this end that those crops, such as hay, which can
be returned to the farm as manure, should not be carried away to
such an extent as will impair the fertility of the soil, or leave it
unproductive if it is so.    But there are lands so rich that the sale
of the whole crop of a single year would not impair their fertility ;
so  there are lands, such as  the intervals of our rivers that are
so fertilized by the deposit from the overflow of water as to need

no manuring. There are perhaps but few farmers who do not at some time sell a portion of their hay crop consistently with good husbandry. The practice of good farmers in this respect, in regard to their own farms, is good husbandry; for a good husbandman.does not suffer his farm to be impoverished.

In the case at the bar, it was not for the court to assume that the carrying off of the greater portion of the hay for a single year was necessarily bad husbandry. It was a question of fact and was for the jury. The request which the plaintiff made was properly refused, and the question of fact properly submitted to the jury. There was no exception taken upon the ground that the court submitted the point to the jury without any instructions; nor does it appear from the case that the court did so submit it.

The cases cited from our reports (2 D. Chip. 108, and 19 Vt. 379) only show that manure left on a farm in the barn-yard or stables passes by a deed of the farm, and that the tenant, who has fed out upon a farm the hay cut on it, cannot remove the manure.

III. As between John Gray and the defendant the relation of landlord and tenant existed. The title of the farm was in John Gray. The defendant had a lease of it for one year, and was to pay the rent in money. There was a hop-yard on it but no poles. The defendant could not raise hops without poles—could not compel the plaintiff to furnish poles, and therefore had to furnish them himself or lose the use of the hop-yard. The landlord by the lease conferred on him the right to cultivate the farm in the usual mode of husbandry, which as to the hop-yard was to set poles for the hops to run on, and, when the hops were fit to be picked, take them down to gather the crop. What could be more plainly unjust than to say that if he furnished poles to raise his crop they should thereby become the property of the landlord, not because the landlord had paid for them nor because such was the intent of the parties when they made the lease, (for their intent was plainly to the contrary), but by an arbitrary rule of law that setting the poles into the ground made them an irremovable part of the realty.

The case of *Elwes* v. *Maw*, 3 East 38, denying to erections for agricultural purposes the liberal rule which had been applied to

buildings made for the benefit of the trade, has often been questioned in this country, 2 *Pet.* 144 ; *Leland* v. *Gassett*, 17 Vt. 410-411 ; 17 Pick. 192 ; 16 Conn. 382 ; 30 Johns. 28. But we deem it needless to review the authorities on this point,—for the articles here annexed to the soil were so placed by the tenant, for a mere temporary use and with the intent to remove them, and would be held removable as between landlord and tenant both by English and American decisions. See the authorities cited in 2 Sm. Lead. Cas. p. 208, 209, 218 and 219.

If the defendant as between him and Gray had the right to remove the poles we are next to inquire as to his right as affected by the deed from Gray to the plaintiff. When that deed was given the defendant was in possession and had set the poles. His possession was notice to the plaintiff so as to put him on inquiry as to the right by which the defendant possessed and his relation to the grantor ; and the plaintiff must be deemed to be affected with knowledge of the facts he would have ascertained upon inquiry—that is that the defendant was a tenant having the right to carry on the farm for the year. This right he was not bound to put on the record, and his landlord by selling the land could not defeat any rights he had as tenant. The defendant was not bound to know of, or search the records for a subsequent conveyance from his landlord to a third person, or to omit the exercise of any right granted by the lease because the landlord might thereafter sell the farm. A subsequent grantee would take the land subject to the rights of the tenant under the lease. The lease so far as it went was as operative as the subsequent deed— and being prior in time and accompanied by possession, all the tenant's rights as against the landlord continued as against his landlord's grantee. The plaintiff therefore got no greater right by his deed than his grantor John Gray had.

On this point the plaintiff further claims that the defendant was in substance an owner of the farm, as he had a right to half of all it could be sold for above $1000. But this gave him no title to the farm. It was merely a chance to profit by specula- tion. It could not affect his right by his lease to cultivate the farm as a tenant in the ordinary way and to remove such fixtures as he was compelled to put on it in order to enjoy its use. The

right to erect and to remove the poles resulted from the tenancy —not from the provision that he might have half of what it might sell for over $1000.

We do not deem it necessary to decide the question whether hop poles used upon a farm for permanent cultivation and kept upon the farm for such use are or are not a part of the realty so as to pass by a deed of the farm. The case in 1 Kernan (11 N. Y.) 123, *Bishop* v. *Bishop*, was decided substantially as between grantor and grantee. Here the rights of the parties depend on the relation of landlord and tenant. We have not time to review in detail the authorities cited by the plaintiff; it may suffice to say that none of them conflict with the views here expressed as to the rule applicable to landlord and tenant. The case of *Dennison* v. *Powers*, 30 Vt. 752, recognizes the right of the tenant to remove fixtures as an exception to the common law rule. For the purpose for which the plaintiff cites that case to show that the tenant's possession would not put a subsequent grantee upon inquiry it is not an authority; for the court say that the plaintiff's title in that case was derived from the Trull mortgage which was executed before Allard had such open and notorious possession as would put a purchaser upon inquiry.

We think there was no error in the charge on this point.

IV. As to the posts and boards—they were personal property, and there is nothing in the case to show that they were kept or left on the farm for the purpose of fencing in such a way as to convert them to realty. The case says there was no evidence for what purpose they were there. Of course they remained personalty and would not pass to the plaintiff by his deed from Gray.

Judgment affirmed.