## JONATHAN COREY *v.* JOSIAH BISHOP.

A tenant at will of buildings only, who occupies part of a barn to keep his cattle, and feeds them from his own hay which he removes from his own farm for that purpose, will be entitled to the manure thus made by his cattle, and may remove or sell the same while such tenancy continues or after it has expired.

And if the lessor during the continuance of such tenancy, or after it has ceased, sell and convey the premises on which the manure is thus situated to a third person, not reserving the manure, yet if the purchaser has knowledge of the facts relative to the manure, he cannot hold the same under his deed.

THIS is an action of trover for taking twenty cords of manure.

In October, 1865, the plaintiff's buildings, excepting a barn containing twenty-five tons of hay, were burned. The third day after, the plaintiff made an arrangement with one Anna Bishop, the mother of his first wife, and grand-mother of two of his children, who lived about a mile and a half away, to move into her house with his family and occupy a part of the barn with his stock, and feed out his hay to them there for the coming winter. The plaintiff moved his family and cattle as aforesaid, and occupied a part of the house and a part of the barn. The manure that was made by the plaintiff's cattle when tied in the stables was thrown in piles by itself, while that that was dropped by them when in the yard was mingled in common with the manure of said Anna's cattle.

The plaintiff so occupied till the first of March following, and feeding out his said hay, and intending and expecting to draw back the manure on to his own land, and so said in the presence of the said Anna without any objection being made by her, and further said that he should draw it when the ground settled. The defendant is the son of the said Anna, and lived near by and knew of the plaintiff's living and keeping his cattle at his mother's, as aforesaid, and of the occasion of it, and where the fodder came from upon which the cattle were fed, as aforesaid, and where the manure was placed and dropped. About the middle of February, 1865, while the plaintiff was living at the said Anna's, she sold one undivided half of her said farm to the defendant, and let him have the other half to carry on upon some terms without any reservation of the plaintiff's manure, and on the first day of April the defendant entered and took possession. In May, the plaintiff went for his manure, and found that the defendant had drawn out about three-quarters of it, when he told defendant it was his manure, and forbade his taking it. The defendant insisted upon taking it, and did draw out the balance.

It is claimed by the plaintiff, but admitted by the defendant for the special purpose of raising the questions of law in this case, and denied for every other purpose, that the defendant was told by the plaintiff before he bought, that he intended and expected to move the manure away in the spring, and also after he bought, and that the defendant made no objection thereto, or to his so doing, till the time when he went after it as aforesaid. While, on the other hand, it is claimed by the defendant and denied by plaintiff, except for the purposes of this case, that he had

no knowledge of the plaintiff's talk before said Anna, as to taking the manure away, and had no talk with the plaintiff upon that subject; and that when he went on to said farm, he took his stock there, and threw his manure on to the plaintiff's heap from the stable, and mingled it with it in the yard, by his cattle running there.    It is agreed by the parties that the questions arising on this case be reserved, and that either party may go to the jury if he so elects, after obtaining the opinion of the court, otherwise judgment shall be according to the opinion of the court.

Case reserved.

*H. & G. A. Bingham*, for plaintiff.

The manure in this case was not manure made in the ordinary course of carrying on the farm which the defendant bought, but was manure made out of the course of husbandry so far as that farm was concerned, and from hay and by cattle belonging to the plaintiff's farm from which the hay and cattle were brought by reason of misfortune, for the purpose of using temporarily the buildings on the Anna Bishop farm.    The manure was in fact situated the same as if made in the ordinary course of husbandry on the plaintiff's farm.

The defendant also understood the circumstances under which the manure was made, when he bought, and was previously notified by the plaintiff that he intended to draw it away.

Under this state of facts the property in the manure did not pass by virtue of the conveyance from Anna Bishop to the defendant.    *Needham* v. *Allison*, 24 N. H. 355; *Plummer* v. *Plummer*, 30 N. H. 558; *Daniels* v. *Pond*, 21 Pick. 371; *Lassell* v. *Reed*, 6 Greenl. 222.

*Carpenter*, for defendant.

The questions *intended* to be raised are:

1.    Whether the manure made upon said Anna's premises under the circumstances stated was, in the absence of any agreement, her property or that of the plaintiff's, and we cite *Daniels* v · *Pond*, 21 Pick. 367; *Perry* v. *Carr*, 44 N. H. 118; *Plummer* v. *Plummer*, 30 N. H. 458; *Lassell* v. *Reed*, 6 Greenl. 222; *Needham* v. *Allison*, 24 N. H. 355; *Lewis* v. *Lyman*, 22 Pick. 442, *Putnam, J.*; *Stone* v. *Proctor*, 2 D. Chip. 113; *Wetherbee* v. *Ellison*, 19 Vt. 379; *Middlebrook* v. *Convin*, 15 Wend. 169.

2.    Whether, if plaintiff had a right to remove the manure during his tenancy, he could do so after its termination.    *State* v. *Elliott*, 11 N. H. 540; *Gaffield* v. *Hapgood*, 17 Pick. 192; *Fitzherbert* v. *Shaw*, 1 H. B. 1. 258; *Beers* v. *St. John*, 16 Conn. 322; *Sawyer* v. *Twiss*, 26 N. H. 340; *Lee* v. *Riedon*, 7 Taunt. 188; *Colgrave* v. *Santos*, 2 B. & C. 76; *Lyde* v. *Russell*, 1 B. & Ad. 394; *Whiting* v. *Brastow*, 4 Pick. 310; *Conner* v. *Coffin*, 22 N. H. 541, and authorities cited; 2 Kent's Com. 4th ed., 346; *Shepard* v. *Spalding*, 4 Met.

416; *Preston* v. *Briggs*, 16 Vt. 124; *Elwes* v. *Mawe*, 3 East. 38, and notes; 2 Smith's Leading Cases, 99, *et seq.*

3. Whether the manure, assuming it to have been the property of the plaintiff, with the right to remove it after his term, by agreement between him and said Anna, and whereof the defendant had no notice, did or did not pass to defendant by virtue of said Anna's conveyance, see *Noble* v. *Bosworth*, 19 Pick. 314; *Safford* v. *Annis*, 7 Greenl. 168; *Rice* v. *Adams*, 4 Harrington 332.

4. What was the effect of commingling the manure from the cattle of plaintiff and said Anna in the yard? *Robinson* v. *Holt*, 39 N. H. 557, and cases cited.

SARGENT, J. The occupancy by plaintiff of the premises of his mother-in-law, in this case, would hardly be that of an ordinary tenant; at most it could only be a tenancy at will, and the manure made by his stock from his own hay, brought there from his own farm, could not be said to be made in the ordinary course of husbandry.

Now it is well settled that if a farm is rented for agricultural purposes, and there is no particular agreement as to the manure that shall be made upon it during the tenancy, the manure does not belong to the tenant but to the farm, and must be used on the farm, and the tenant has no more right to remove it before or after the expiration of his term, or to dispose of it to others, than he has to remove or dispose of any fixture belonging to the farm. And that all manure thus made in the ordinary course of husbandry, which may be upon the farm at the time of sale, whether spread upon the land, or lying in the yard, or in heaps in the yards or around the stables, or even in the barns or out-buildings, as between the grantor and grantee, if no other rights intervene, will pass to the grantee as an incident to the land, unless there be some reservation in the deed; a parol reservation being insufficient.

But it is equally well settled that this rule does not apply to manure made in a livery stable, or in any manner not connected with agriculture, or in a course of husbandry, and that in such case the tenant of the livery stable, or the person thus making the manure upon land of another, owns the manure entirely distinct from the real estate, and has the right to remove it or dispose of it as he pleases, by parol or bill of sale, as of any other chattel or personal property. *Plummer* v. *Plummer*, 30 N. H. 558; *Daniels* v. *Pond*, 21 Pick. 367; Taylor's Land. & Ten. sec. 541; *Perry* v. *Carr*, 44 N. H. 118; *Goddard* v. *Gould*, 14 Barb. 662, and cases; *Wing* v. *Gray*, 36 Vt. 261; *Ford* v. *Cobb*, (6 Smith) 20 N. Y. 344; *Noble* v. *Bosworth*, 19 Pick. 314; *Austin* v. *Sawyer*, 9 Cow. 39; *Conner* v. *Coffin*, 22 N. H. 538.

This case stands very much like that of *Needham* v. *Allison*, 24 N. H. 355, where the defendant conveyed his farm to the plaintiff on the 13th of September, reserving the right to occupy the buildings till the first of the next April. During the winter, defendant fed out his own hay to his own stock in the barn upon the premises, where it was held

that the rights of the parties were rather like those of lessor and lessee of livery stables or the like than those of farming tenants, and that in such a case the owner of the land could have no pretence to claim the manure unless by some special contract, in the absence of which it would be and remain the property of the defendant.

So, here the manure in question was made from plaintiff's cattle, fed on his own hay, which was removed from his farm for that purpose, but in the barn of Mrs. Bishop, which he was occupying for the time being as a tenant at will merely ; and we think that, as between the plaintiff and Mrs. Bishop, the manure (aside from the commingling with her's,) was the personal property of the plaintiff, and that he had the right to remove or sell the same either before or after he ceased to occupy the barn.

It would not stand upon the ground of an article of property affixed to the freehold by the tenant during his term, which he might remove before the term expired if he could without injury to the freehold, but not afterwards, but would more nearly resemble the building built on land of another, with the consent of the owner of the land, and to be removed at the pleasure of the owner of the building. It being the plaintiff's chattel on the land of another with his permission, plaintiff might enter at any time and remove it. If, after he should be notified to remove it, he did not do so in reasonable time he might be liable for trespass for the entry to remove it, otherwise he would not be. *Dame* v. *Dame*, 38 N. H. 429. There would seem to be no doubt that this was the understanding between plaintiff and Mrs. Bishop from the facts stated in the case.

The next question is as to the effect of the deed and lease from Mrs. Bishop to defendant, of the premises on which the manure was lying.

It has been held in New York and some other States, that in case a chattel is so annexed to the freehold as that it would pass as real estate between grantor and grantee, yet if the chattel so annexed be the separate property of a third person, who has the right to remove it, and the chattel has never in fact become a part of the realty, it would not pass by a deed of the real estate, even to a grantee who had no notice of the existing state of things. *Dubois* v. *Kelley*, 10 Barb. 496 ; *Smith* v. *Benson*, 1 Hill 176 ; *Mott* v. *Palmer*, 1 Comstock 564, where it is held that in such case, if the grantor is wronged in that way, his remedy is upon the covenants of his deed ; see, also, *Russell* v. *Richards*, 1 Fairfield 429. In other jurisdictions it has been held that personal property thus annexed to the freehold, though thus owned by a third person, would pass by a deed of the real estate to the grantee without notice of the facts, and that in such case the owner of the chattel must look to the grantor who had thus conveyed away his property for its value, but that the chattel thus annexed would pass as a part of the real estate by the deed to a *bona fide* purchaser without notice. *Powers* v. *Dennison*, 30 Vt. 752. But in no case is it held that the grantee who had notice of all the facts could hold the chattel.

In this State the question has not been settled by any express decision that we are aware of. In *Dame* v. *Dame*, before cited, *Bell, J.* seems

to favor the doctrine as held in New York, (38 N. H. 433.) But in that case there was full notice to the purchaser of all the existing facts as to the ownership of the house by the third person, and the conclusion was that the grantee *having notice* of the facts when he took his deed, could not hold the building which stood upon the land conveyed, but which belonged to another.

In *Haven* v. *Emery*, 33 N. H. 66, the C. & P. Railroad having agreed with the plaintiffs that plaintiffs should deliver to the road a certain quantity of iron rails, that the road should lay them upon a designated part of their track, and that upon the payment by the road of a specified price the rails should become the property of the road, and that until such payment they should remain the property of the plaintiffs; and the rails having been laid upon the track according to the terms of that contract, it was held that the rails did not become the property of the road until they were paid for; and the rails not having been paid for, the plaintiffs were entitled to hold against subsequent mortgagees of the road who had notice of the plaintiffs' interest when they took their mortgage. *Perley*, *C. J.*, in the opinion, in speaking of the doctrine of *Mott* v. *Palmer*, 1 Comstock, *supra*, says: "We are not yet prepared to acquiesce in such a doctrine. Primarily, and in the absence of notice to the contrary, the purchaser would seem to have the right to suppose that he was buying with all the incidents and appurtenances which the law, as a general rule, annexed to his purchase, and we should hesitate before we held that he could be affected by a private agreement, not brought to his knowledge, which changed the natural and legal character of the property. But if the purchaser buy with notice of the agreement and of the party's rights under it, he will be bound by it." We held substantially the same doctrine in *Stanton* v. *Thompson*, Hillsborough county, June Term, 1867; *Daniels* v. *Pond*, 21 Pick. 366, and cases cited.

Had the defendant notice in this case of the facts as they existed between the plaintiff and Mrs. Bishop when he took his deed and lease of the farm? If he received the notice which he is admitted to have received for the purposes of this case, both before and after he bought from the plaintiff, there could be no doubt about it. But omitting that altogether, we think the facts found by the case, and which are not in dispute for any purpose, are sufficient to show notice.

Defendant is the son of said Anna, and lived near her; he knew of plaintiff's misfortune, of his relationship to said Anna, and knew all about the facts of plaintiff's living there and keeping his cattle there, and bringing his hay there and feeding it out, and knowing these facts he is bound to take notice that the manure thus made from plaintiff's cattle would not belong to the farm or to Mrs. Bishop, unless there was a special contract to that effect, which he had no right to presume; and that thus being personal property and belonging to the plaintiff he had the right to remove it, and therefore that it did not and could not pass by the deed or lease from Mrs. Bishop to defendant.

The fact that the defendant put the manure made from his cattle afterwards upon the plaintiff's heaps would not affect the plaintiff's rights,

though it might have justified the plaintiff in taking the whole of it, if he could not have distinguished the defendant's from his own. That intermixturewas made by the defendant with full knowledge of the facts in the case, and was therefore his fault, and though that might have justified the plaintiff perhaps in taking the whole of it, yet the plaintiff's rights to what clearly belonged to him were not affected by this wrongful act of defendant.

So far as the manure was mingled in the yard, it seems that it was done by the consent of both this plaintiff and Mrs. Bishop, which would make them tenants in common in that portion of the manure. When, therefore, Mrs. Bishop sold and leased the farm to defendant, her interest in this manure passed to him, with and as a part of the land, which made him a tenant in common with the plaintiff of this manure, and his subsequent acts amount to a conversion of the plaintiff's interest in the same, and the plaintiff can maintain trover for such interest. *White* v. *Brooks*, 43 N. H. 402 ; *True* v. *Congdon*, 44 N. H. 48.

There must, therefore, be judgment for plaintiff for the value of all the manure made by his stock on the farm in question, unless upon motion the case shall be discharged.