Godard *v.* Gould.

———————•••———————

GODARD and others *vs.* GOULD & STRONG.

By a written contract, entered into by and between the plaintiffs and S., F. & Co., certain machinery was to be manufactured by the former and set up in the mill of the latter, and the plaintiffs were to remain owners of the machinery until it was paid for. The machinery was set up in the mill, according to the contract; the mode of annexation being such that it could be removed without injury to the building. *Held,* that the machinery did not, by the annexation, become part of the realty, so as to pass by a deed of the mill and lot, executed by S., the owner thereof; but that it continued to be personal property, and to belong to the plaintiffs, so long as the purchase money remained unpaid; and that the plaintiffs could maintain trover therefor, against the grantees in the deed.

THIS action was brought to recover damages for the value of certain goods and chattels, viz. a Fourdenier machine, shafting and gearing, &c. belonging to the plaintiffs, and alledged to have been converted by the defendants. The defendants de-

nied, by their answer, the allegations in the complaint, and alledged that a certain lot and building, with the appurtenances, in which building the said machinery was put, and which became a part of said building and the fixed machinery therein, was purchased by the defendants, and conveyed to them by deed, from Samuel B. Stoddard and wife ; and they averred that they became and were purchasers in good faith, without notice of any claim or title of the plaintiffs, of the said lot and building, and the machinery so put into, and annexed and fixed to, said building. The plaintiffs, in their reply, denied the allegations in the answer. The cause was tried at the Monroe circuit, in July, 1852, before Justice Pratt, without a jury. The plaintiffs' counsel read in evidence an agreement, dated July 18, 1852, between Goddard, Rice ·& Co. (the plaintiffs) of Worcester, Mass., and Stoddard, Freeman & Co., of Rochester, N. Y., by which the plaintiffs agreed to make for S. F. & Co., the machinery in question, within two months, and box it and put it on the cars, for the sum of $3800. Stoddard, Freeman & Co. agreed to purchase the machinery, and to pay for it the above sum, part in old machinery, and the balance in their drafts on New-York, payable at different times ; and until the said drafts should mature and were paid, the machinery was to continue the property of the plaintiffs. Stoddard, Freeman & Co. agreed that their mill should be ready to receive the machinery, when completed ; and the plaintiffs were to furnish a good and suitable man to superintend the setting up of the machinery, with all proper despatch, and to box and put on the cars or canal boat, the old machinery. The machinery was to be carefully used by Stoddard, Freeman & Co. and insured for the safety of the plaintiffs. The plaintiffs' counsel admitted that $1800, part of the purchase money of the machinery, had been paid, but claimed that two bills of exchange drawn by Stoddard, Freeman & Co. for $1000 each, the remainder of the purchase money, remained unpaid ; and said bills of exchange were read in evidence. The defendants proved that the machinery was placed in a building erected by Stoddard, Freeman & Co. to receive it. It was put up by Mr. Durant, a person sent by the plaintiffs for that

purpose. The witness described the method of putting up the machinery. It was fastened to timbers ten or twelve inches square with screws half an inch in diameter and six inches long, and with bolts running through the timbers. There were about fifty of the screws used in fastening the machine to the timbers. The stands were fastened by bolts running through the timbers with a nut. There were twelve or fourteen stands. The machine was connected with the propelling power by bolts. It was propelled by water. The machine was in different parts. The Fourdenier part, presses, &c. were separate machinery. The presses were set up together. The drivers were set up in a frame. The stands which contained the drivers were about eleven feet by eight. The frames of the presses were 4 or 5 feet by 8. The two presses were fastened together. The different machines were fastened to the timbers in the building and formed one continuous machine. The rags were put into one end and came out paper at the other end. The machine could not be taken out whole without cutting away the walls of the building. No one of the frames could be taken out whole without cutting away the walls of the building; but the machine could be taken apart, and laid on the floor, in half a day, with hands enough. The heads of most of the bolts were on the underside of the timbers, and the nuts on the upper side. The stands had a flange through which were screws. The bolts fasten the frames to timbers. It was admitted by the plaintiffs that the legal title to the real estate and building in which the machine was placed was in Samuel B. Stoddard. The defendants then read in evidence a deed from Samuel B. Stoddard and wife to the defendants, dated May 1, 1851, recorded May 10, 1851. Consideration $100 conveying in fee the paper mill property occupied by Stoddard, Freeman & Co., including the land and building in which the above mentioned machine was placed, as testified to by the witnesses. This deed, after describing the land and water privileges, contained the following: "And also the buildings and erections on the said parcels of land and the implements, tools and fixtures therein and appertaining thereto." The testimony being closed, the defendants' counsel insisted

that the plaintiffs were not entitled to recover. 1st. Because they had not shown any title to the machine which was the subject matter of the action. 2d. That inasmuch as the said machine had become annexed and fixed to the building erected to receive it, with the consent and by the act of the plaintiffs, its character was changed from personal to real property, and the title thereto passed to the defendants by the conveyance from Stoddard of the real estate, as part of the real estate so conveyed, discharged of the plaintiffs' lien for the purchase money. 3d. That the evidence established that the machine in question had become fixed to, and had become a part of the realty. That the defendants were purchasers in good faith, for a valuable consideration, of the real estate, and of the machine as part of the real estate, and were entitled to hold it against the title set up by the plaintiffs. 4th. That upon the whole case, the plaintiffs were not entitled to recover, and ought to be nonsuited. The judge refused to nonsuit the plaintiffs, and decided that the plaintiffs were entitled to recover, and assessed the plaintiffs' damages at $2169,14. The defendants appealed.

*S. Mathews*, for the appellants.

*H. K. Jerome* and *J. A. Spencer*, for the respondents.

*By the Court*, T. R. Strong, J. By the terms of the contract between the plaintiffs and Stoddard, Freeman & Co., the machinery was to be set up in the mill of the latter, the plaintiffs furnishing a suitable person to superintend that business, and the plaintiffs were to remain the owners of it until it should be paid for. The machinery was set up in the mill according to the contract, and the evidence clearly shows that the mode of annexation was such that it could be removed without injury to the building; that the building would after its removal, and without any labor or expense, be equally as well fitted and prepared to receive other machinery of a similar kind as it was for the reception of that in question. Upon these facts, and·

a balance of the price remaining unpaid, I am satisfied the law is, that the machinery did not by the annexation, become part of the realty, but continued to be personal property, and to belong to the plaintiffs.  In *Smith* v. *Benson*, (1 *Hill*, 176,) it was held that a building for a dwelling or grocery, erected by one person on the land of another, with an understanding between them that it might be removed at any time, was not part of the freehold, but personal property.  Cowen, J., by whom the opinion of the court was delivered, says : " Prima facie such a building would be a fixture, and would not be removable. The legal effect of putting it on another's land would be, to make it a part of the freehold.  But the parties concerned may control the legal effect of any transaction between them, by an express agreement."  In *Mott* v. *Palmer*, (1 *Comst.* 564,) the general principle that one man may own the soil, and another buildings and fixtures upon it, and that in such a case those erections will be personal property, is recognized, and *Smith* v. *Benson*, and several other cases, are referred to in support of it. (*See also Smith* v. *Jenks*, 1 *Denio*, 580 ; 1 *Comst.* 90.)

The deed of Stoddard and wife to the defendants, did not affect the right of the plaintiffs to the machinery.  The machinery being personal property, the grantors could not convey a greater interest in it than they had.  It is not material whether or not it would have passed by the deed without the special clause embracing fixtures, and as part of the land, but for the agreement that the plaintiffs should remain the owners ; it was in either case personal property, belonging to others, whose title the grantors could not transfer.  Nor does the fact that the defendants are bona fide grantees in the conveyance, make any difference.  The plaintiffs in no way consented to the conveyance ; they have not practiced any fraud on the defendants ; their equities are at least equal to those of the defendants, and the recording act has no application to the case.  I am not aware of any principle upon which it could be held that the plaintiffs have lost their title.  If an owner of land upon which a crop of wheat is growing, conveys the land to a bona fide pur-

Godard *v.* Gould.

chaser, the conveyance will transfer the wheat, if the grantor owns it, but not, if it belongs to a third person. In the latter case, the deed has no more operation upon the title of the third person, than if the wheat had been severed from the soil at the time the deed was executed. A greater effect cannot be properly given to the conveyance in this case.

I am of opinion, therefore, that the decision at the circuit was right, and that the judgment should be affirmed.

Judgment at special term affirmed.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, Johnson* and *T. R. Strong,* Justices.]