(1)

# SUPREME COURT.

## GEORGE McREA agt. CENTRAL NATIONAL BANK and JOHN A. QUACKENBUSH.

*When fixtures in a building pass by sale of it.*

The question of articles being *fixtures* is now, not whether they may be removed without great injury to the building or to themselves, but depends upon the *intention of their annexation.*

Where a building was constructed for a twine factory, and the machinery adapted to that business was put into it for permanent use by the owner, who subsequently conveyed the premises by a deed without any particular reference to the machinery there, and took back from the grantee a mortgage for a part of the purchase-money, and after these writings were closed the question arose as to whether the machinery passed by the deed, to settle which the grantor gave to the grantee a separate bill of sale thereof, without taking back any other security than his purchase-money mortgage, and the question having subsequently arisen whether this mortgage covered the machinery and was a lien thereon in preference to a levy under executions against the grantee and owner by creditors:

*Held,* 1st. As this property was actually annexed to the freehold; 2d. As the building was specially constructed for a twine factory and the machinery adapted to it; 3d. As the intent of annexation was to make it a part of the realty; 4th. As the parties to the mortgage intended that the mortgage should cover it, not as chattels but a part of the realty, and, 5th. As the mortgage is in part for the purchase-money of the very articles, it is determined that the plaintiff is entitled to the relief asked in his complaint.

*Rensselaer Circuit, November,* 1874.

*R. A. Parmenter & Mr. Peck,* for plaintiff.

*Smith, Fursman & Cowen,* for defendants.

WESTBROOK, J. — This case involves the perplexing question : What are fixtures ? It now arises between the plaintiff, who holds a mortgage for the purchase-money of certain premises, and the defendants, who claim to hold the property under judgments and executions against the mortgagor.

The facts are in brief these : The premises had been owned and used by the plaintiff for nine years as a twine mill, or factory; he had four years ago, built a new mill thereon and put the machinery into it which is the subject, of this controversy, " for permanent use."

On the 14th day of November, 1872, the plaintiff contracted to sell the premises to one George Catlin for $28,000, payable as follows : $5,000 cash January 1, 1873, the buyer assuming all mortgages upon the property ; and for the balance a bond and mortgage was to be taken, payable in five years from January 1, 1873, with interest.

On the 1st day of January, 1873, the premises were conveyed by McRea to Catlin, by two deeds, and a mortgage executed and delivered back by Catlin to McRea, for $21,100, the balance of the purchase-money.

The deeds and mortgage were drawn by a Mr. Merrill. After they were finished (they contained no allusion to the machinery) Mr. Catlin read over the deeds and saw no mention was made of the machinery, and asked McRea if he did not intend that should pass. To this McRea replied he did. Mr. Merrill then suggested that the " easiest way," or the " best way," to fix it was to make a separate bill of sale, which was done. No separate mortgage of the machinery was taken.

Some time after this, in January, 1873, Catlin conveyed one-half of the premises to Christopher A. Banker, and also gave to him a bill of sale of one-half of the machinery.

The Central Bank of Troy recovered judgments against Catlin & Banker, and issued executions to the defendant Quackenbush, as sheriff of Rensselaer, who has seized upon the property described in the complaint.

The action seeks to restrain that sale. The question then is : Can the plaintiff hold the property under the purchase-money mortgage, or will the executions against Catlin & Banker take it ?

No point is made that this action cannot be maintained, provided the mortgage of the plaintiff will hold the property. The machinery in question is worth from $10,000 to $11,000.

It is exceedingly difficult in cases of this description to lay down any test which shall be of universal application. I fully concur with Hunt, C., in *Voorhees* agt. *McGinnis* (48 *N. Y.*, 278 ; *see page* 282) that, " the circumstance that the machinery may or may not be removed without great injury to the building or to itself, is not now deemed to be control-ling." Neither was such a test applied in *Potter* agt. *Crom-well* (40 *N. Y.*, 287). Both these cases, and also *Loflin* agt. *Griffith* (35 *Barb.*, 58) make the question of the articles being fixtures, depend upon the intention of the annexation.

The building was constructed for a twine factory ; the machinery was put into it for permanent use. The case is stronger in this respect than in *Potter* agt. *Cromwell*, for in that the building was not erected for the purpose to which the machinery, the subject of the controversy, was adapted. Here the very object and intent of the structure was a twine factory, and without this machinery it would lose its distinctive character.

As this building was specially constructed for a twine factory, as the machinery was specially adapted to use in that building, and, above all, as the intention in placing the machinery in the building was to make it *permanently* a part of the realty, it is held that the property described in the complaint is a part of the real estate, and the mortgage covers it.

There is nothing in the subsequent dealings between Catlin and McRea which changes the status of the property. It is true that McRea conveyed the property to Catlin by

bill of sale; but it is also true that this was an after-thought, adopted at Catlin's suggestion for greater caution. Neither McRea, nor the scrivenor who drew the papers, supposed this to be necessary in the first instance. The deeds and the mortgages were drawn without any allusion to the machinery. As Catlin said they were not mentioned, the person who drafted the papers suggested a separate bill of sale, and McRea acquiesced in it. He did not, however, take a chattel mortgage upon the machinery, nor allude to it in his mortgage. The contract called for a mortgage on the property conveyed; only $5,000 was paid; and as the value of this property is from $10,000 to $11,000, it cannot be assumed that the mortgage was not intended to cover this machinery, and that McRea did not regard it as a part of the realty. Neither is it to be assuméd that Catlin did not intend that the mortgage should cover this machinery; to suppose otherwise would be the imputation to him of a deliberate intent to defraud.

In *Murdock* agt. *Gilford* (18 *N. Y.*, 28) it was not found as a fact that the looms were intended to be permanent annexations to the building; and the mortgagee treated them as personalty, by separately describing them. In this case the intention to annex permanently, and the intention between the parties — the mortgagor and the mortgagee — to treat this machinery as part of the realty, are expressly found.

The case of *Vanderpoel* agt. *Van Allen* (10 *Barb.*, 157) also lacks the controlling element found in this, to wit: an intent to make the articles a part of the realty. The recent cases quoted above ( *Voorhees* agt. *McGinnis*, 48 *N. Y.*, 278; *Potter* agt. *Cromwell*, 40 *N. Y.*, 287) turn principally on this question of intent.

There is also a very strong equity in favor of this plaintiff. The property was originally his, and he conveyed it to another. This mortgage under which he claims, represents the purchase-price, and the suit is a struggle to hold that

McRea agt. Central National Bank.

which in equity and good conscience should be his. There seems to be no propriety in allowing it to be taken from him and given to others.

As this property was, first, actually annexed to the freehold; second, as the building was specially constructed for a twine factory, and the machinery adapted for it; third, as the intent of annexation was to make it a part of the realty; fourth, as the parties to the mortgage intended that the mortgage should cover it, not as chattels but as a part of the realty; and fifth, as the mortgage is in part for the purchase-money of the very articles, it is determined that the plaintiff is entitled to the relief asked in his complaint.