(26 App. Div. 527.)

PEOPLE ex rel. NATIONAL STARCH MFG. CO. v. WALDRON et al.

(Supreme Court, Appellate Division, Second Department.　March 29, 1898.)

1. TAXATION—REAL AND PERSONAL PROPERTY.

As between the people and the owner of a building, the question whether engines, shafting, and other machinery and apparatus contained therein are to be deemed real or personal property, under Rev. St. (9th Ed.) p. 1676, §§ 2, 3, for the purpose of taxation, is to be decided upon principles no less rigid than those applicable to a question of fixtures as between vendor and vendee.

2. SAME.

In such a case, the tests to be applied are:　First, relation of annexor to the land; second, purpose of annexation; third, method of annexation.

3. SAME.

The circumstance that the machinery could be removed without material injury to the building is not controlling.

Appeal from special term, Queens county.

Certiorari by the people, on the relation of the National Starch Manufacturing Company, against James I. Waldron and others, assessors of the town of Oyster Bay.　From an order reducing the assessment, the defendants appeal.　Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George W. Davison, for appellants.

E. T. Payne, for respondent.

GOODRICH, P. J.　The property in question consists of 31 acres of land, of the value of $200,000, and of 11 steam engines, 43 pumps, and other tools, shafting, pulleys, etc., in the relator's building upon said land at Oyster Bay, which are assessed at $130,000, and owned by the relator, a foreign corporation having its principal place of business in the city of New York.　The assessors assessed the entire property as real estate, fixing the value at $330,000.　It was stipulated between the parties that the machinery, etc., is taxed as part of the relator's property in the city of New York, and both parties have requested the court to render a decision upon the nature of the relator's machinery,—that is, whether it is real or personal property,—irrespective of the place where it is now taxed.　2 Rev. St. (9th Ed.) p. 1676, in the chapter on "Taxation," contains the following provisions:

"'Land' Defined.　Sec. 2. The term 'land,' as used in this chapter, shall be construed to include the land itself above and under water; all buildings and other articles and structures, substructures and superstructures erected upon, under or above, or affixed to the same.　*　*　*　'Personal Estate.' Sec. 3. The terms 'personal estate,' and 'personal property,' whenever they occur in this chapter, shall be construed to include all household furniture; monies; goods; chattels," etc.

In another article occurs the following section (page 1681):

"Property of Corporations.　Sec. 6. The real estate of all incorporated companies liable to taxation, shall be assessed in the town or ward in which the same shall lie, in the same manner as the real estate of individuals.　All the personal estate of every incorporated company liable to taxation on its capital, shall be assessed in the town or ward where the principal office, or place for transacting the financial concerns of the company, shall be.　*　*　*"

It is evident that the question must turn upon the construction to be given to these provisions of the statute; in other words, whether the machinery, etc., fall within the definition of land or personal estate, and whether or not they are to be regarded as fixtures. The corporation being the owner of the entire property, I think that the rule to be applied between it and the people is to be decided upon principles no less rigid than those which would be applied to a question of fixtures, arising between vendor and vendee. The authorities cited below lay down the principle that, in order to determine the character of such property, three tests are to be applied, which may be tersely stated as follows: First, relation of annexor to the land; second, purpose of annexation; third, method of annexation. In Potter v. Cromwell, 40 N. Y. 287, a judgment creditor of the owner of certain premises had issued execution, and the premises had been sold by the sheriff to the defendant, Cromwell. The owner had previously erected upon the premises certain machinery, including what is known as "Noyes" Portable Gristmill." After the sale the judgment debtor surrendered possession to the defendant, who, with his consent, removed the machinery and gristmill and subsequently received the sheriff's deed of the premises. The plaintiff, who was afterwards appointed receiver in supplementary proceedings against the debtor, sued to recover the property which had been removed from the mill; and the court held that the mill was a part of the realty; that, where machinery is actually annexed to the land, it will be presumed to have been so attached with a view to the permanent improvement or beneficial enjoyment of the freehold, and will be deemed a fixture, in the absence of proof that the attachment was merely for the purpose of steadying and adjusting the machine; or that the intention at the time existed, not afterwards abandoned, that the annexation should not be permanent in character; or that there is some agreement or relation of parties inconsistent with the supposition that a permanent annexation was intended; and that, in determining whether a particular article is or is not a fixture, the intention of the party who attached it is an important element to be considered. The court refers to the case of Teaff v. Hewitt, 1 Ohio St. 511, in which the three elements of the test above enumerated were stated, and fully adopts the views of the Ohio court in that respect. Again, in Voorhees v. McGinnis, 48 N. Y. 278, 282, the court cited and restated the doctrine of its former decisions, using the following language:

"There are several tests, in the form of general principles, that will aid in the determination of the present question: (1) The rule is quite uniform that to give to articles, personal in their nature, the character of real estate, the annexation must be of a permanent character. There are exceptions to this rule, in those articles which are not themselves annexed, but are deemed to be of the freehold from their use and character, such as mill stones, fences, statuary and the like. Potter v. Cromwell, 40 N. Y. 287; Capen v. Peckham, 35 Conn. 88. (2) A second test, but not so certain in its character, is that of adaptability to the use of the freehold. Voorhis v. Freeman, 2 Watts & S. 116; Pyle v. Pennock, Id. 390. (3) A third test is that of the intention of the parties at the time of making the annexation. Potter v. Cromwell, supra; Murdock v. Gifford, 18 N. Y. 28; Winslow v. Insurance Co., 4 Metc. (Mass.) 306; Swift v. Thompson, 9 Conn. 63; Capen v. Peckham, 35 Conn. 88. The circumstance that the machinery may or may not be removed without great injury to building

or to itself is not now deemed to be controlling. In Potter v. Cromwell, supra, the tests are declared to be—First, actual annexation; second, the use or purpose of the application of the machinery; third, the intention to make the annexation a permanent accession to the freehold."

In McRea v. Bank, 66 N. Y. 489, the court approved the doctrine of Potter v. Cromwell, and held that the criterion of a fixture is the union of three requisites: First, actual annexation to the realty or something appurtenant thereto; second, application to the use or purpose to which this part of the realty with which it is connected is appropriated; third, the intention of the party making annexation to make a permanent accession to the freehold. Washburn, in his treatise on Real Property (volume 1 [5th Ed.] p. 24), states the rule as to fixtures as follows:

"If the owner of lands provides anything of a permanent nature fitted for and actually applied to use upon the premises by annexing the same, it becomes a part of the realty, and passes to the purchaser, though it might be removed without injury to the premises."

In Ger. Tit. Real Est., p. 512, it is said:

"As a general rule, whatsoever is affixed to, or on, or essential to the beneficial use of the land passes with the land, although the rule has been modified at times to suit the customs of different localities or trades."

In the case at bar, the relation of the annexor to the land being that of owner, it had the entire control of both species of property. It is conceded by stipulation that the "machinery was placed in the factory building for the purpose of carrying on relator's manufacturing business," which is indicated by the title to be that of manufacturing starch. The machinery is essential to the business, and without it the latter could not be conducted on the premises. It is not hard to infer, indeed the conclusion cannot be avoided, that the machinery was annexed with the idea of permanency, only limited by the cessation of the business of manufacturing starch on the premises or the substitution of other machinery. Mr. Grimm, the superintendent of the relator, applied to the assessors, on behalf of the company, "to reduce the valuation of the company's real estate as set down in the assessment roll for the present year to the sum of $200,000." He appeared before the assessors, was examined, and testified as follows:

"Q. What reduction do you ask in the valuation of said real estate? A. One hundred and thirty thousand dollars. Q. On what grounds do you ask it? A. On the ground that its value as now set down in the assessment roll is grossly overestimated. That its value is not above $200,000. Q. When did you acquire it? A. It was acquired by the company in connection with business, good will, and personal property connected with the business in 1890. Q. How (by purchase. inheritance, etc.)? A. By purchase in the manner stated. Q. If by purchase, when did you buy it? A. In the year 1890. Q. What did you pay for it? A. It is impossible to say. The good will of the Glen Cove Manufacturing company, its patents, real and personal estate were taken in a lump, and stocks and bonds for a large part of the price issued in payment. Q. What improvements have been made upon it and at what outlay? A. Ordinary repairs and betterments, of no particular value."

It would appear by this evidence that the machinery was placed in the building by the relator's predecessors in title, as the former company was engaged in a similar business of manufacturing and transferred the whole property to the relator, and it may be assumed

that the intention of the annexor, whether the old or the new company, was the same, namely, to carry on the manufacturing business. Indeed, as the relator purchased the premises, including the machinery, from the former company for business purposes, added force is given to the presumption that the machinery was intended to be permanently located. These facts imply permanency, and therefore the purpose of the annexor must be deemed to have been that of a permanent addition for the operation of its business; and within the doctrine of Potter v. Cromwell, in the absence of all evidence to the contrary, it "will be presumed to have been attached with a view to the permanent improvement or beneficial enjoyment of the freehold, and will be deemed a fixture." The method of annexation does not, therefore, seem to be of great importance. The evidence is that some of the machines were on brick or wooden foundations, fastened with bolts; some of them were lightly fastened with screws; some consisted of shafting; and could all be removed without material injury to the buildings. But it was held in Voorhees v. McGinnis, supra, that these facts are "not now deemed to be controlling."

Our conclusion is that, for the purpose of assessment, the machinery has become a fixture and a part of the realty; and it follows that the order of the special term must be reversed, with $10 costs and disbursements, and determination of assessors confirmed, with $10 costs. All concur.